[Pro Se Filing – 1:23-CV--02433(ER)]

## Affidavit in Support of Complaint

1. I want you to file this case it as one case by merging with Civil Action No. 1:23-cv-02433(ER) ("No. 02433"). The reason for this is as follows. First, the defendants and the points of the complaint are the same as No. 02433. Second, I am an ordinary investor without a US federal attorney license, and I have completed this document myself. Because I do not have legal knowledge, it is difficult for me to relate the case I am alleging to a particular section of the Federal Rules of Criminal Procedure. I ask that you understand the disadvantage of my situation in this case.

2. I wrote this document based on what the SEC and other global financial organizations have consistently argued about crypto asset securities, DeFi, DAO etc. In particular, the content of this document is related to the series of grounds and allegations described in No. 02433, and accordingly, overlapping contents are not written or made brief. Since, my case is simpler than No. 02433, I did not divide the contents such as the 'Defendant' and 'Facts' in the form of No. 02433, but briefly described and inserted or attached evidence. In relation to my claim, if additional details such as grounds and logic are required or if a change in the document format is required, I will immediately supplement the relevant documents.

3. Please consider that I am at a disadvantage compared to the defenders. I hope that my complaint will be delivered to the plaintiff, the SEC, and that you give the defendant a fair punishment by citing my case in the argument of No. 02433.

2130487 / 금융복합그룹검사팀 / 홍경미 / 1-15-99
이 문서는 금융감독원 자산이므로 사전 승인없이 복사, 촬영, 수정 및 배포 등을 하실 수 없습니다.       3002456009-118

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kyong Mi, Hong<br><br>Unit 502, Daesagwan-ro 7-gil 5, Yongsan-gu, Seoul, Republic of Korea<br><br>(+82)010-4470-5513<br><br>ziohong@gmail.com<br><br>          Plaintiff,<br><br><br>JUSTIN SUN, TRON FOUNDATION LIMITED, BITTORRENT FOUNDATION LTD.<br><br><br>          Defendants. | Case No. 23-2433<br><br>JURY TRIAL DEMANDED |

COMPLAINT

Plaintiff KyongMi Hong alleges the following:

## Criminal Complaint

1. I am an investor who has held TRX securities since 2017. In September 2020, I moved the TRX securities in my wallet to the 'Tronlink pro application' operated by the BTT Foundation to join the Foundation's Sun-mining project in, and in December, I lost my private key by accident(the case confirmed by a criminal trial in South Korea). Since that accident, my assets have been converted into frozen assets in the Tronlink pro application wallet and stored.

2. I requested the Tron Foundation to reissue the securities several times via email, but they ignored my email. In January 2021, I sent a certification of contents, claiming to them that this case was not simply the loss of the key, but the issuance authority for loan receivables and unfair gains. The gist of the claim is as follows. ( This is an excerpt from the content certification I first sent to the Tron Foundation in January 2021.)

3. First, the usual case of private key loss involves assets with market value, meaning the assets in my account has no market value ("j-assets," which mean that the assets get frozen if they are attached with the letter "j" in front of the assets and become not-tradable on the exchange). The reason why the assets are without market value is that I converted the existing JST and SUN assets into jJST and jSUN, which hold no market value, to participate in the JUSTlend project. The assets can only be used for the JUSTlend project, and if they do not get liquidated after the completion of the project, they become trash because they hold no value.

4. Second, I did not lose the assets in my account; rather, I lost the password to the assets that belong to the Foundation (meaning they are loan receivables). The JUSTlend project is a project for financial transactions. I converted my assets into j-assets to provide a

3

loan to a third-party and transferred the converted assets to the Tron Foundation. The evidence for this is that I have to go through a liquidation process to use the assets as they were before the participation in the project. This means that as long as the assets in the account are "j-assets," they belong to the Foundation and I cannot take any action on them.

5. Third, the Foundation provided guarantee for all processes under the project. In other words, the j-assets are loan receivables guaranteed by the Foundation. I did not deal one-on-one with the borrower. Because I had a great faith in the Foundation, I provided the loan to the borrower without screening his/her creditworthiness and debt-servicing ability. It was the Foundation that I trusted, not the borrower. Also, if you did not vouch for it, I would not have converted the assets and make them non-tradable on the exchange.

6. Fourth, they referred to this frozen asset as "receipt" on the platform. As a result, they deliberately or even unintentionally mislead investors into significant securities investment information. They deprive investors of important information about securities investment.

> My Supply(2)   My Borrow   Mining Rewards(6)
>
> ⓘ Important reminder: jToken (e.g. jTRX, jUSDT) is an important receipt for your supplied asset. Please think twice before transferring jTOKEN to a third party!
> Learn more

7. I appointed Selvam LLP in Singapore as a lawyer in June 2021 and sent Tron Foundation the second proof of contents in August. However, they did not respond until the due date, and I checked the status of the corporation through the law firm. When I checked in October, they had already filed for corporate liquidation with ACRA and were in the process of liquidation,

4

including dismissal of employees. We filed an application with ACRA to stop the liquidation of the corporation.

> 2021년 10월 19일 화요일, Ram, Niranjanaa <NRam@selvam.com.sg>님이 작성:
>
> Dear Miss Hong,
>
> We have chased the Tron foundation for a reply on multiple occasions, as set out below:
>
> 1. On 6 August 2021, we sent Tron Foundation a letter of demand, setting out your claims;
>
> 2. On 1 September 2021, we sent Tron Foundation a further reminder, setting out your claim and seeking a response by 6 September 2021;
>
> 3. On 2 September 2021, Tron Foundation replied stating that they will look into the matter, and that there was a delay as they needed to figure out internally who was to respond;
>
> 4. On 5 October 2021, we sent a further chaser to Tron Foundation as they had yet to provide any reply.
>
> We have attached the above correspondences for your reference.
>
> Given their failure to respond, we have conducted a further check on Tron Foundation, and discovered that they have gazetted themselves to be struck off, and be de-registered.
>
> Additionally, our checks have revealed that the directors of Tron Foundation, Jiang Yiying and Ng Lay Kian have another Company called BitTorrent Foundation Limited, incorporated on 4 October 2018. Based on our research, we believe these two companies may be related as Tron Foundation's recruitment website redirects to BitTorrent Inc.
>
> In light of the above, we propose the following:
>
> 1. File an objection with the Accounting and Corporate Regulatory Authority to Tron Foundation Limited being struck off. This will need to be done by 7 November 2021. Under Singapore law, a Company cannot be struck off if they have existing debts against them;
>
> 2. To send a letter to the directors of Tron Foundation, Jiang Yiying and Ng Lay Kian, and Tron Foundation's founder and CEO Justin Sun, asking if BitTorrent is Tron Foundation's successor, and to explain what will happen to the tokens in the Tron system. In addition, we may consider threatening legal action against them personally on the basis that they were complicit in the causing loss to our client.
>
> Please do let us know if we may proceed as stated above. Following the response from the Tron founders, we can discuss the best possible action to take, including whether you should commence a suit.
>
> Please do let us know if you have any clarifications on the above.
>
> Kind Regards,
>
> Niranjanaa Ram
> Associate
>
> Selvam LLC
> 16 Collyer Quay #17-00
> Singapore 049318
> P: +65 6311 3691
> F: +65 6311 0058

8. In January 2022, the Tron side (Drew & Napier LLC) claimed Tron's existing foundation was already converted into an organization called DAO in the second quarter

of 2021, and that point precedes August, when our lawyer sent the proof of contents. Claiming that, the organization DAO rejected my request, saying that it does not play the administrative role.

> 20. The TRON network had already initiated steps to become a fully-fledged Decentralised Autonomous Organisation ("**DAO**") since the second quarter of 2021. That is well before your earliest letter issued to our client, which you claim was sent on 6 August 2021. This transition of the TRON network to a DAO made the administrative role of our client no longer necessary, and that prompted our client's dissolution and application to be struck off the Register of Companies. Our client's application to be struck off is absolutely unrelated to your client's claim. Hence, our client takes the position that your client's claims have completely no foundation at all.
>
> 21. In the premises, our client is unable to and will not accede to your client's demand at paragraph 16 of your 30 November letter.
>
> 22. All of our client's rights are expressly reserved. Nothing herein shall be construed as an admission to any allegation in your 30 November Letter or letters sent to our client thus far.
>
> Yours faithfully
>
> *[signature]*
>
> Drew & Napier LLC

9. But this is not true. The Tron Foundation deliberately shied away from responsibility by deceiving victims by claiming that the former corporation was liquidated. The reason for this is as follows.

10. First, Contrary to their claims, I sent a certification of contents during the period when former corporation continued to exist prior to the foundation of TRON DAO and I have evidence to prove it. Since January 2021 when I sent the first certification of contents to the TRON Foundation, I have requested responses several times regarding depositor protection schemes and procedures, referring to the incompleteness of DeFi, but I have not received any response. After I hired my lawyer, they have intentionally delayed giving the response saying they need some time to find the person to take charge of this matter. Therefore, the law firm on my side carried out an investigation on its own and found out that you had already taken a

liquidation procedure and the procedure was coming to an end. While we managed to file with ACRA to request cease of the liquidation proceedings, the TRON Foundation announced the resignation of Justin Sun as CEO and publicly promoted the establishment of a new corporation when then-existing corporation still continued to subsist.

First, certification of contents was first received on January 21, before the existing corporation was liquidated.

11. Second, the Tronlink pro application that operates Defi is being operated by the BitTorrent Foundation. As described in No. 02433, Justin Sun owns and controls Tron Foundation Limited ("Tron Foundation")and BitTorrent Foundation Ltd. ("BitTorrent Foundation"). This series of companies operate as one company with different functions but substantially the same purpose.

12. Third, an organization called DAO claims not to play the administrative role, but it actually does. We can easily find DAO's Job listing in linkedIn. Above all, many international financial institutions, including the SEC, deny the reality of DAO. Recently, there have been social issues caused by DeFi and cryptocurrency systems such as Luna, which has led global financial authorities and international organizations including SEC to emphasize the need for regulations and oversight for such systems. In fact, a number of global organizations and authorities have spoken in multiple reports and interviews that they agree DeFi systems are actually centralized and they are simply mere means of evading regulations. In conclusion, even if they switch to DAO, the substance is the same, but the intention is to indemnify them by advocating decentralization. In other words, their DAO establishment is intended to deliberately evade the law.

2130487 / 금융복합그룹검사팀 / 홍경이 / 1-15-99
이 문서는 금융감독원 자산이므로 사전 승인없이 복사, 촬영, 수정 및 배포 등을 하실 수 없습니다.    3002456009-118

| **Reports from International Supervision Organizations** |
|---|
| ◆ (FRB, 21.4.) Since most of DeFi has de facto dependencies on a centralized operator, regulator should watch closely and analyze carefully if a given DeFi protocol is indeed decentralized or showing attempts to get around regulations.<br>「Decentralized Finance: On Blockchain- and Smart Contract-Based Financial Markets」<br><br>◆ (SEC, 21.11.) There must be a group of operators as DeFi's operational governance is concentrated in the hands of venture capital investors.<br><br>◆ (BIS, 21.12.) There is a decentralisation illusion in DeFi.<br><br>◆ (FSB, 22.2.) DeFi applications and products often exist along a spectrum of centralization and there clearly exist potential system risks, money laundering opportunities and ambiguous regulatory jurisdictions.<br>「Assessment of Risks to Financial Stability from Crypto-assets」<br><br>◆ (IOSCO, 22.3.) DeFi protocol governance is not decentralized as it is mostly concentrated in its early venture capital investors, and it lacks the ability to provide with regulations and protection for investors though it offers analogous financial services.<br>「IOSCO DECENTRALIZED FINANCE REPORT」 |

13. I asked them several times for data that stipulates the matters and procedures guaranteed by the foundation, such as investor protection related to the defi project, but I have not received any reply from them.   As stated in No. 02433, they made a lot of money avoiding existing securities laws. Defi and DAO have been problematic by the SEC and many global financial institutions, including the SEC's recent accusations against Binance. Although Defi and DAO are not currently directly described in No. 02433, I would like to further charge their violations through my case. Please merge this issue with No. 02433 and take it seriously.

Kyong Mi, Hong  *Kyong Mi, Hong*

Unit 502, Daesagwan-ro 7-gil 5, Yongsan-gu, Seoul, Republic of Korea

(+82)010-4470-5513

ziohong@gmail.com

